**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Armando Lisasuain

    v.                                  Civil No. 12-cv-490-PB

Hillsborough County
Department of Corrections et al.[1]

**REPORT AND RECOMMENDATION**

Armondo Lisasuain files this action pursuant to 42 U.S.C.
§ 1983, alleging violations of his constitutional rights during
his incarceration at the Hillsborough County Department of
Corrections ("HCDC").  The matter is before this magistrate
judge for preliminary review to determine, among other things,
whether the complaint (doc. nos. 1, 3, and 8-10)[2] states any
claim upon which relief might be granted.  See 28 U.S.C.
§ 1915A(a); United States District Court District of New
Hampshire Local Rule ("LR") 4.3(d)(2).

_____

[1]In addition to the Hillsborough County Department of
Corrections ("HCDC"), Lisasuain names the following HCDC
employees as defendants to this action: Superintendent David
Dionne; Deputy Chief of Security Martineau (first name unknown
("FNU")); Capt. FNU Hiscoe; Dr. FNU Harris; and mental health
worker Christina Mellnick.

[2]Lisasuain filed an initial complaint (doc. no. 1) and four
addenda thereto (doc. nos. 3 and 8-10).  The five documents will
be construed, in the aggregate, as the complaint in this matter
for all purposes.

**Standard for Preliminary Review**

Pursuant to LR 4.3(d)(2) and 28 U.S.C. § 1915A(a), the magistrate judge conducts a preliminary review of pro se in forma pauperis complaints before defendants have an opportunity to respond to the claims.  The magistrate judge may direct service of the complaint, or, as appropriate, recommend to the district judge that one or more claims be dismissed if: the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious.  See 28 U.S.C. § 1915A(b); LR 4.3(d)(2).

In determining whether a pro se complaint states a claim, the court must construe the complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010).  To determine plausibility, the court treats as true all well-pleaded factual allegations, and construes all reasonable inferences drawn therefrom in the

plaintiff's favor.  See Ocasio-Hernández v. Fortuño-Burset, 640
F.3d 1, 12 (1st Cir. 2011).

**Background**

Lisasuain, while he was in HCDC custody in 2006, attempted
suicide by slicing himself, while in court, with a razor that he
had obtained at the HCDC.  When Lisasuain was reincarcerated at
the HCDC in December 2010, he was placed on suicide watch, at
least in part because of his suicidal actions in 2006.  On May
9, 2012, Lisasuain, while still on suicide watch at the HCDC,
again attempted suicide, using a razor blade.  For these
reasons, Lisasuain was retained on suicide watch from December
2010 until February or early March 2013, the duration of his
pretrial detention at the HCDC.[3]

Between December 2011 and February 2013, the period
relevant to the allegations in the instant complaint, Lisasuain
was consistently housed on suicide watch status on the HCDC's
maximum security unit, and was thus not allowed to have anything
in his cell except two pieces of clothing (a pair of pants and a
shirt), two hygiene items (a bar of soap and a roll of toilet
paper), and bedding (a mattress, a pillow, and one blanket).
While on suicide watch, Lisasuain had one hour of out-of-cell

---

[3]In March 2013, Lisasuain was transferred to the New
Hampshire State Prison.

time ("OOCT") daily, during which he had access to certain property that HCDC policy forbids inmates on suicide watch to keep in their cells.  These items included a Bible, rosary beads, books, legal materials, and pen and paper.  During OOCT, Lisasuain was also given access to the phone and the shower. When Lisasuain complained to HCDC officials that his OOCT was insufficient to do both his legal work and everything else he was only allowed to do during OOCT, he was granted an additional hour, daily, to access his legal materials and do legal work outside of his cell.

Lisasauain alleges that while on suicide watch: he received cold "bag" meals three times a day, every day, with no day-to-day variation in the contents; he was not given extra blankets, thermal clothing, or socks when his cell was very cold; and he was not allowed to keep his glasses, legal material, pens, paper, a Bible, or rosary beads in his cell.  Lisasuain alleges that the duration of his placement on suicide watch exceeded what was necessary to keep him safe, and that HCDC mental health staff members refused to release him from that status, which subjected him to unduly restrictive conditions of confinement. Lisasuain believes that prison officials subjected him to excessively long, restrictive suicide watch conditions to punish him for his previous suicide attempts.

Lisasuain states that other inmates who are white (which, impliedly, Lisasuain is not), were released from maximum security suicide watch within weeks, while Lisasuain spent fourteen months on that unit, and twenty-six months on suicide watch.  Lisasuain further claims that the refusal of any HCDC employee to release him from suicide watch status or to allow him to have certain items in his cell were acts taken in retaliation for his filing of this lawsuit, as well as a prior lawsuit, Lisasuain v. Hillsborough Cnty. Dep't of Corrs., 12-cv-224-PB ("Lisasuain I"),[4] against HCDC officials.  Lisasuain concludes, therefore, that the HCDC mental health staff decision to retain his watch status was punitive, retaliatory, and racially motivated.

Based on the allegations in the complaint (doc. nos. 1, 3, and 8-10), Lisasuain asserts the following claims for relief, arising between December 2011 and February 2013:

> 1.    Lisasuain's Fourteenth Amendment right not to be placed in punitive conditions of confinement during his pretrial detention was violated by:

> > a.    His inappropriate retention on suicide watch and the restrictive living conditions consequent to that status;

---

[4]In June 2012, Lisasuain filed an action, Lisasuain v. Hillsborough Cnty. Dep't of Corrs., 12-cv-224-PB, in which he asserted that, while he was incarcerated at the HCDC between December 2010 and December 2011, HCDC officials violated his rights.  That action is pending.

b.    The denial of adequate nutrition;

c.    The denial of sufficient bedding and
clothing to keep him warm; and

d.    The failure of defendants to follow HCDC
policy concerning suicidal inmates;

2.    Lisasuain's Fourteenth Amendment equal protection
rights were violated by HCDC officials keeping him on
suicide watch longer than other allegedly similarly
situated white inmates, due to Lisasuain's race;

3.    Lisasuain was denied adequate opportunities to do
legal work, in violation of his rights under the First,
Sixth, and Fourteenth Amendments to meaningfully access the
courts;

4.    Not allowing Lisasuain to keep either a Bible or
rosary beads in his cell, limited his ability to practice
his religion, in violation of: (a) the First Amendment's
Free Exercise Clause, and (b) the Religious Land Use and
Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.
§§ 2000cc-1;

5.    Defendants retaliated against Lisasuain, in
violation of his First Amendment right to petition the
government for redress of grievances, by effecting the
constitutional violations challenged in this action; and

6.    Defendants, with deliberate indifference, denied
Lisasauin adequate mental health care, in violation of the
Fourteenth Amendment.

**Discussion**

I.   Conditions of Confinement (Claims 1(a)-(d))

Lisasuain asserts that, during his detention at the HCDC,

he was subjected to harsh and restrictive conditions of

confinement.  As a pretrial inmate, Lisasuain's right to humane

conditions of confinement that are not so severe or restrictive

6

as to constitute punishment is protected by the Fourteenth
Amendment.  See Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir.
2005).  That right is coextensive with a sentenced inmate's
rights under the Eighth Amendment.  See id.  An inmate is
protected from conditions of confinement that "from an objective
standpoint . . . deny him the minimal measure of necessities
required for civilized living."  Id. (citing Farmer v. Brennan,
511 U.S. 825, 834 (1994)).  To assert a constitutional
violation, the inmate must also demonstrate that "from a
subjective standpoint, the defendant was deliberately
indifferent to inmate health or safety."  Surprenant, 424 F. 3d
at 18-19 (citing Farmer, 511 U.S. at 836-37).

Lisasuain alleges that: his food was inadequate
nutritionally; he received the same meals every day; his cell
was very cold at times; he was not provided with adequate
clothing, bedding, and hygiene items in his cell; he was not
allowed to keep certain items in his cell, including, among
other things, a Bible, rosary beads, and legal materials.
Lisasuain includes in his complaint addenda numerous request
slips and grievances he wrote concerning these issues.  The HCDC
officials' responses on those forms indicate that the officials
were aware of Lisasuain's complaints, and that the complaints

did not go unaddressed.  The officials explained to Lisasuain
numerous times that the restrictive conditions of which he
complained were the result of plaintiff being on suicide watch,
where he was placed for his own safety due to his history of
suicidal and self-injurious behavior.  The court must defer to
the HCDC officials' reasonable decisions concerning how to run
that facility, including decisions about where to house inmates,
and how to best insure the safety and security of the inmates,
institution, and institutional staff.  See Cutter v. Wilkinson,
544 U.S. 709, 725 (2005) (in evaluating prisoner claims, court
deference due to prison officials' expertise in prison
security).

      Lisasuain has not alleged that he was subject to inhumane
conditions of confinement.  He was provided adequate food,
clothing, bedding, religious items, hygiene items, and access to
his legal materials.  In light of Lisasuain's suicide watch
status, these conditions appear reasonable.  No facts in the
complaint demonstrate that any of the conditions Lisasuain
described placed his health or safety at risk, or that any
prison official acted either with deliberate indifference to his
needs or to punish him.  Lisasuain has thus failed to state a
claim alleging that the conditions of his confinement violated

his rights under the Fourteenth Amendment, and Claims 1(a)-(d)
should be dismissed.[5]

II.  Equal Protection (Claim 2)

Lisasuain asserts that his Fourteenth Amendment right to
equal protection was violated by HCDC officials' releasing some
white inmates from suicide watch only weeks after they had
attempted suicide.  The Equal Protection Clause of the
Fourteenth Amendment guarantees that "'similarly situated
persons . . . receive substantially similar treatment from their
government.'"  Kuperman v. Wrenn, 645 F.3d 69, 77 (1st Cir.
2011) (quoting Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir.
2004)).  "Equal protection does not, however, require prison
staff to treat all inmate groups the same when differentiation
is necessary to avoid a threat to prison security."  Kuperman,
645 F.3d at 78.

To assert an equal protection claim upon which relief might
be granted, Lisasuain must at least demonstrate that he received

---

[5]Lisasuain also asserts that his rights were violated when
the jail denied him the ability to keep property in his cell in
violation of HCDC policy.  Lisasuain has attached the policy in
question to his complaint, which clearly enumerates the items of
property allowed in the cell of an inmate on a suicide watch.
Lisasuain does not allege that he has been denied any of the
items permitted by that policy.  The legal basis for this claim
is unclear, and the court cannot reasonably infer any viable
claim based on the facts alleged.

different treatment than other inmates similarly situated to him. Lisasuain has not alleged sufficient facts to demonstrate that he was similarly situated to the other inmates referenced in the complaint. The only similarities asserted are that they all attempted suicide, and were then placed on suicide watch. Particularly where jail officials are evaluating the individual mental health status of inmates, the court will not presume, without supporting facts, that all inmates placed on suicide watch after attempting suicide are similarly situated.

Lisasuain also alleges, without any supporting facts, that the extended duration of his time on suicide watch was due to discrimination against him based on his race. Lisasuain asserts no specific facts to indicate that race discrimination resulted in his extended suicide watch status duration. Accordingly, the court should dismiss Claim 2.

III. Access to the Courts (Claim 3)

Lisasuain alleges that he was denied sufficient opportunity to do his legal work because he was not allowed his legal materials in his cell and that during the time he was allowed to work out of his cell he was handcuffed to the table. To state a claim that he was denied meaningful access to the courts, however, Lisasuain must show that his legal status was harmed by the deprivation of adequate legal materials, or other means for

10

accessing the courts.  See Lewis v. Casey, 518 U.S. 343, 351 &
355 (1996).  Here, Lisasuain has failed to allege facts showing
that he has suffered actual injury in his ability to challenge
his conviction.  Accordingly, the court should dismiss Claim 3.

IV.  Religious Practice (Claim 4)

Lisasuain asserts that both his federal constitutional and
statutory rights to practice his religion were burdened by the
prison's failure to allow him to keep a Bible and rosary beads
in his cell.  The First Amendment Free Exercise Clause, which
applies to the states, see Elk Grove Unified Sch. Dist. v.
Newdow, 542 U.S. 1, 6 n.4 (2004), "requires government respect
for, and noninterference with, the religious beliefs and
practices of our Nation's people."  Cutter, 544 U.S. at 719.

The First Amendment provides less protection to an inmate's
right to practice his religion than does RLUIPA.  See Bader v.
Wrenn, 675 F.3d 95, 98 (1st Cir. 2012) ("RLUIPA provides greater
protection to inmates' free-exercise rights than does the First
Amendment.").  RLUIPA "bars prisons . . . from substantially
burdening an inmate's religious exercise unless the regulation
under attack is the least restrictive way to advance a
compelling state interest."  Kuperman, 645 F.3d at 79 (citing
Cutter, 544 U.S. at 715-16).

Prisoners are not entitled to unencumbered access to practice their religion; only the right not to have their ability to practice their religion subject to substantial burden. "[W]hile freedom to believe is absolute, the exercise of religion is not, and [] prison officials may legitimately impose certain restrictions on the practice of religion in prison." Cookson v. Comm'r, Me. Dep't of Corrs., No. 1:10-cv-00256-JAW, 2012 WL 32378, *11 (D. Me. Jan. 4, 2012), report and recommendation affirmed by 2012 WL 899535 (D. Me. Mar. 15, 2012) (addressing First Amendment free exercise claim); see also Bader, 675 F.3d at 99 (not all burdens on prisoners' religious practice are prohibited by RLUIPA).

Here, Lisasuain asserts that he was provided access to his Bible and rosary beads for an hour every day. Lisasuain does not assert, however, any facts to allow the court to infer that his ability to practice his religion was unreasonably burdened or impaired by limited access to a Bible and rosary beads. Lisasuain has thus failed to state sufficient facts to support a claim under either the First Amendment or RLUIPA. The court should dismiss Claim 4.

## V.   Retaliation (Claim 5)

Lisasuain asserts that he was subjected to the conditions complained of in his complaint by HCDC officials retaliating

against him for filing a prior lawsuit, Lisasuain I, against the
HCDC.  The First Amendment shields prisoners from retaliation in
response to their engaging in protected speech.  Ortiz v.
Jordan, 131 S. Ct. 884, 893 (2011) (citing Crawford-El v.
Britton, 523 U.S. 574, 592 (1998)).  In order to assert a
retaliation claim, however, Lisasuain must point to specific
facts that demonstrate that the adverse acts taken by HCDC
officials were motivated by an intent to punish Lisasuain for
exercising his First Amendment right to file a lawsuit.
Lisasuain's claim relies solely on conclusory allegations, and
is devoid of any specific facts supporting his allegation of
retaliation.  Accordingly, the court should dismiss Claim 5.

VI.  Mental Health Care (Claim 6)

     Lisasuain asserts a claim that he was denied mental health
care, alleging that HCDC mental health care providers failed to
see him frequently enough to appropriately assess his readiness
for release from suicide watch.  Lisasuain concedes that mental
health care providers did periodically see and speak to him
during his stay in suicide watch, and that those providers told
him to file a request slip if he sought further evaluation or
treatment.

     Lisasuain also admits that he refused to submit a request
for a visit from a mental health worker.  Lisasuain asserts that

he felt that if he had submitted such a request, HCDC officials would perceive that request as Lisasuain's admission that he needed mental health care, and that such an admission would prevent his release from suicide watch.  Lisasuain thus states in his complaint that he neither asked for, nor needed, the mental health care he now complains that he did not receive. While Lisasuain asserts he was improperly denied release from suicide watch, the facts alleged do not demonstrate that he was denied adequate mental health care, and Claim 6 should be dismissed.

### Conclusion

For the foregoing reasons, the court finds that Lisasuain has failed to state any claim upon which relief might be granted, and the complaint in this matter (doc. nos. 1, 3 and 8-10) should therefore be dismissed in its entirety.  Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to

magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

May 6, 2013

cc:  Armando Lisasuain, pro se

LBM:jba